**No. 25-807**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

STATE OF WASHINGTON, et al.,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the Western District of Washington
District Court Case No. 2:25-cv-127

## SUPPLEMENTAL BRIEF FOR APPELLANTS

BRETT A. SHUMATE
 *Assistant Attorney General*

ERIC D. MCARTHUR
 *Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE
BRAD HINSHELWOOD
DEREK WEISS
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7230*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, DC 20530*
 *(202) 616-5365*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................1

BACKGROUND.............................................................................................2

ARGUMENT ..................................................................................................3

   I.     The Supreme Court's Renewed Emphasis on Proper Remedies
        Requires Renewed Focus on Proper Parties .......................................3

      A. The States Lack Article III Standing....................................................4

      B. The States Cannot Assert the Rights of Third Parties ......................5

   II.    Even If the States Were Proper Plaintiffs, the Injunction Is
        Overbroad..............................................................................................6

      A. The Injunction Is Broader Than Necessary to Provide the
          States Complete Relief .......................................................................7

      B. Even If a Narrow Injunction Left Unremedied Some Residual
          Injury, Universal Relief That Imposes Substantial Burdens on
          the Defendant Would Still Be an Abuse of Discretion ...................13

CONCLUSION ..............................................................................................15

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases:**　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Page(s)**

*Arizona v. Biden*,
　31 F.4th 469 (6th Cir. 2022) ...................................................................13

*Freedom Holdings, Inc. v. Spitzer*,
　408 F.3d 112 (2d Cir. 2005) ...................................................................15

*Gill v. Whitford*,
　585 U.S. 48 (2018) ...................................................................................16

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
　527 U.S. 308 (1999) ...................................................................................1

*Haaland v. Brackeen*,
　599 U.S. 255 (2023) ...................................................................................8

*Kinney-Coastal Oil Co. v. Kieffer*,
　277 U.S. 488 (1928) ...................................................................................7

*Koster v. (American) Lumbermens Mut. Cas. Co.*,
　330 U.S. 518 (1947) .................................................................................15

*Pennsylvania v. New Jersey*,
　426 U.S. 660 (1976) ...................................................................................4

*Trump v. CASA, Inc.*,
　606 U.S. __ , 2025 WL 1773631 (U.S. June 27, 2025) ................. 1, 2, 3, 4, 5, 6, 7, 8,
　　　　　　　　　　　　　　　　　　　　　　　　　　　10, 12, 13, 14, 15, 16

*Washington v. Trump*,
　No. 25-807, 2025 WL 553485 (9th Cir. Feb. 19, 2025) .................................3

*Winter v. Natural Res. Def. Council, Inc.*,
　555 U.S. 7 (2008) ................................................................................ 8, 16

**Other Authority:**

Samuel L. Bray & Paul B. Miller, *Getting into Equity*,
　97 Notre Dame L. Rev. 1763 (2022) ..................................................6, 13-14

## INTRODUCTION

The Supreme Court granted the government's application for a partial stay of the preliminary injunction on appeal "to the extent that the injunction[ is] broader than necessary to provide complete relief to each plaintiff with standing to sue." *Trump v. CASA, Inc.*, 606 U.S. __ , 2025 WL 1773631, at *15 (U.S. June 27, 2025). Consistent with the government's argument here, Gov't Br. 49-53; Reply Br. 30-31, the Supreme Court held courts can grant "equitable remedies 'traditionally accorded by courts of equity' at our country's inception," *CASA, Inc.*, 2025 WL 1773631, at *6 (quoting *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)), which are limited to providing "complete relief *to the plaintiffs before the court*," *id.* at *11.

The Supreme Court directed that "lower courts shall move expeditiously to ensure that, with respect to each plaintiff, the injunctions comport with this rule and otherwise comply with principles of equity." *Id.* at *15. The government respectfully requests this Court comply with the Supreme Court's order by promptly issuing an order addressing the questions left open by the Supreme Court's decision, which would give effect to the stay pending appeal granted by the Supreme Court, in advance of this Court's forthcoming resolution of the appeal on the merits.

The Supreme Court left two issues for this Court to address in the first instance: whether the States have standing and whether a universal injunction for the State plaintiffs comports with the principles of equity the Supreme Court identified.

*Id.* at *4 n.2, *12, *15.  As the government explained, Gov't Br. 42-49; Reply Br. 24-30, Article III and third-party standing principles bar the States' suit here, as it is premised on purported downstream injuries to the States created by an alleged deprivation of the individual rights of state residents.  In any event, a narrower injunction tailored to the States' purported injuries would provide them complete relief.  Gov't Br. 51-52; Reply Br. 30-31.  Even if the narrower injunction provided slightly less than complete relief, any residual injury to the States cannot justify a universal injunction.  *CASA, Inc.*, 2025 WL 1773631, at *12 (noting that a "stronger . . . story" is needed for a "broader and deeper . . . remedy" (quotation omitted)).

## BACKGROUND

The district court issued a nationwide injunction premised on the claims of the four States.  While the Supreme Court said the district court here "acknowledged the [States'] complete-relief argument," the Supreme Court concluded the district court "primarily granted a universal injunction on the basis that the 'extreme nature of the equities ... alone warrant[ed] nationwide relief.'" *CASA, Inc.*, 2025 WL 1773631, at *11 n.14 (quoting ER-14) (alterations in original)—by which the district court apparently meant its conclusion that the Executive Order reflects a "constitutional violation[]" that the government "has no legitimate interest in enforcing," ER-13-14.  "In addition," the court reasoned, "a geographically limited injunction would be ineffective" to remedy the States' injuries.  ER-14.  "For example, babies born in other states would travel to the Plaintiff States" and "be eligible for services and

2

support that, without nationwide relief, need be funded by the Plaintiff States." ER-14. The district court further noted the "recordkeeping and administrative burden from such an arrangement." ER-15.

The government appealed and sought a partial stay pending appeal of the nationwide scope of the injunction. A panel of this Court denied the motion, with two judges simply stating that the government had not made a "strong showing" of likelihood of success on the merits and one judge concluding that the government had not shown a risk of irreparable harm. *Washington v. Trump*, No. 25-807, 2025 WL 553485, at *1 (9th Cir. Feb. 19, 2025) (quotation omitted); *id.* at *1-2 (Forrest, J., concurring).

The government applied to the Supreme Court for a stay pending appeal, urging both that the States cannot proceed under third-party standing principles and that the universal scope of the injunction was improper. The Supreme Court partially granted the stay, *CASA, Inc.*, 2025 WL 1773631, at *15, without addressing whether the Executive Order is lawful, *id.* at *5.

## ARGUMENT

### I.    The Supreme Court's Renewed Emphasis on Proper Remedies Requires Renewed Focus on Proper Parties.

The Supreme Court stayed the injunction to the extent the States lack "standing to sue," *Trump v. CASA, Inc.*, 2025 WL 1773631, at *15, and left it to lower courts to address standing. The parties have already fully briefed both Article III

3

standing, Gov't Br. 44-49; States Br. 11-18; Reply Br. 28-30, and third-party standing, Gov't Br. 42-44; States Br. 21-25; Reply Br. 24-28, and both issues are ripe for this Court's resolution.

### A. The States Lack Article III Standing.

*CASA, Inc.* makes clear that States' standing is crucial to the availability and scope of injunctive relief. The Court squarely rejected the States' argument (at 10-11) that their standing is irrelevant: Equitable relief is available only to remedy the injuries of "plaintiff[s] with standing to sue." *CASA, Inc.*, 2025 WL 1773631, at *15. The Supreme Court stayed the injunction to the extent the States lack standing. *Id.* As we explained in our briefs, Gov't Br. 44-49; Reply Br. 28-30, the States premise standing on purported losses of federal funding from programs administered by the States but jointly funded by States and the federal government. But when someone is ineligible, neither the State nor the federal government pays for the individual under the program, and the State would not incur the costs for which reimbursement would be reduced. The States' injuries here thus turn on the claim that they would incur other expenses because of a voluntary decision to provide services outside the federal program—a self-inflicted injury that cannot support standing. *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam). In any event, these sorts of downstream effects of federal policy on state expenditures are the sort of attenuated and indirect effects that cannot give rise to state standing.

4

**B. The States Cannot Assert the Rights of Third Parties.**

"[A] litigant seeking to assert the legal rights or interests of others must demonstrate ordinary Article III standing for itself *and* answer the additional 'threshold question whether [it has] standing to raise the rights of others.'" *CASA, Inc.*, 2025 WL 1773631, at *18 (Alito, J., concurring) (second alteration in original). The States here lack standing to assert the alleged citizenship rights of their residents.

The limited equitable relief that would be available to the States, *see infra* pp. 6-15, underscores why they are not proper plaintiffs. Fundamentally, this suit is about the citizenship status of nonparties. But the States cannot assert the rights of those nonparties or seek relief tailored to their alleged citizenship rights. So, a court may craft injunctive relief focused only on the States' injuries—the reimbursement-related injuries discussed below. *See CASA, Inc.*, 2025 WL 1773631, at *15. In a suit by the proper plaintiffs—the individuals whose alleged citizenship rights are affected by the Executive Order—a court in equity can provide a more natural remedy: "prohibiting enforcement of the Executive Order against" that person. *Id.* at *11.

The mismatch between the rights asserted and the remedy sought further underscores why the States cannot properly assert the rights of third parties. A directly affected party needs relief only for themselves, but indirectly affected parties—like the States here—can often assert that they require relief for every affected party in order to have relief for themselves. That inverts the general principles of equity: rather than requiring a "stronger" story of harm for "broader and

5

deeper" relief, *id.* at *12 (quoting Samuel L. Bray & Paul B. Miller, *Getting into Equity*, 97 Notre Dame L. Rev. 1763, 1797 (2022)), disregard of third-party standing principles would allow parties only indirectly affected to leverage weaker harm into broader relief.  Nothing in either principles of equity or third-party standing doctrine supports that result.  *Cf. id.* at *18 (Alito, J., concurring) ("Left unchecked, the practice of reflexive state third-party standing will undermine today's decision as a practical matter.").

## II.   Even If the States Were Proper Plaintiffs, the Injunction Is Overbroad.

A court's equitable powers do not allow it to grant an injunction "broader than necessary to provide complete relief to each plaintiff with standing to sue."  *CASA, Inc.*, 2025 WL 1773631, at *15.  Whether a district court has exceeded its powers under the Judiciary Act of 1789 is a legal question reviewed de novo.[1]

But "to say that a court *can* award complete relief is not to say that it *should* do so."  *Id.* at *12.  A court abuses its discretion if it fails to weigh the incremental benefits to the plaintiffs from a broader injunction against the incremental burdens on the defendant from such an injunction.  As discussed, "in equity, 'the broader and

---

[1] In any event, the Supreme Court concluded that the district court did not base this injunction on a conclusion that it was necessary to provide complete relief to the plaintiffs, so that determination must be made in the first instance by this Court.  *See CASA, Inc.*, 2025 WL 1773631, at *11 n.14.

6

deeper the remedy the plaintiff wants, the stronger the plaintiff's story needs to be.'" *Id.* (quoting Bray & Miller, *supra*, at 1797).

The Supreme Court "decline[d] to take up … in the first instance" the applications of these principles and instructed lower courts to "determine whether a narrower injunction is appropriate." *Id.* Under those principles, the injunction here is both impermissible and inequitable. A significantly narrower injunction would provide complete relief. And even if that narrower injunction left unaddressed some minor residual harm to the States, the district court abused its discretion by expanding the injunction to a universal scope based on that residual harm.

## A. The Injunction Is Broader Than Necessary to Provide the States Complete Relief.

**1.** A court sitting in equity can "administer complete relief *between the parties.*" *CASA, Inc.*, 2025 WL 1773631, at *11 (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928)). Accordingly, "complete relief *to the plaintiffs before the court*" is the outer limit of the equitable relief that a court can provide. *Id.* To assess what sort of injunction is necessary to provide "complete relief," a court necessarily focuses on the injury the plaintiff alleges. *Id.* Thus, as the Supreme Court explained, an individual who asserts harm from the Executive Order receives "complete relief" from an order "prohibiting enforcement" as to her; "[e]xtending the injunction to cover all other similarly situated individuals would not render *her* relief any more complete." *Id.* The States, by contrast, have no abstract interest in the citizenship status of any particular

7

individual and cannot predicate their suit on such an interest. *See Haaland v. Brackeen*, 599 U.S. 255, 295 (2023) (explaining that States cannot bring *parens patriae* suits against the federal government). As the parties seeking an injunction, they must demonstrate that an injunction is necessary to remedy the specific harms they claim. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

The States assert fundamentally monetary harms: "financial injuries and the administrative burdens flowing from citizen-dependent benefits programs." *CASA, Inc.*, 2025 WL 1773631, at *12;[2] *see* States Br. 11, 14 (asserting standing based on States' "pecuniary interests" and "direct financial loss"). Specifically, the States contend that they stand to lose "contracted reimbursements" they would otherwise receive under "Medicaid, [the Children's Health Insurance Program (CHIP)], and Title IV-E foster care," as well as "'administrative fees' they otherwise would receive under [the Social Security Administration]'s Enumeration at Birth program." States Br. 11, 13-14. Those harms, the States contend, flow from the federal government's decision to treat children subject to the Executive Order as noncitizens. Because "eligibility for federally matched programs such as Medicaid and CHIP depend on the individual's eligibility under federal law, which necessarily depends on their citizenship

---

[2] The Supreme Court appropriately disregarded the States' various assertions of sovereign interests (States Br. 18-21), which the district court did not rely on when "fashioning injunctive relief, and for good reason": "such harms cannot establish irreparable harm justifying a preliminary injunction, as children subject to the Order would not be eligible to vote or serve on juries for many years." Reply Br. 28 (discussing ER-13-14).

or immigration status," the States will be unable to treat such children as eligible for those programs, leading to a "direct loss of federal reimbursements."  1-SER-156.

For example, under CHIP, Washington's declarant asserts that the federal government would reimburse "at [a] 65 percent match rate," while if the same child is treated as a noncitizen "the State will be left to pay for that care."  1-SER-157. Similarly, under Title IV-E, Washington asserts that "[i]f a child is ineligible for Title IV-E because they are not a citizen," the State "cannot receive federal reimbursements for any of the services provided to that child," 1-SER-166, and that a reduction in the number of eligible children also reduces Washington's overall reimbursement from the federal government for administrative expenses, 1-SER-164. The Enumeration at Birth program similarly provides fees to the States for "collect[ing] newborn birth data, format[ting] it, and transmit[ting] it to the [Social Security Administration] to facilitate the assignment of [social security numbers (SSNs)]," States Br. 14, and the States assert that they will lose these fees "[i]f children born" in the States "become ineligible for SSNs because they are no longer citizens," 1-SER-173.

All of these alleged injuries would be fully remedied by an injunction requiring the federal government to allow the plaintiff States to continue to treat individuals born in the United States but covered by the Executive Order as citizens for purposes of these programs.  Under that injunction, the States would continue to receive reimbursements for those individuals, as they have for similar individuals in the past.

9

And they would be able to treat those individuals as citizens regardless of whether "the States' pregnant residents happen to give birth in any other non-party state, or if individuals from any of those states move to any of the [plaintiff] States." States Br. 59. Nothing about that relief would require extending the injunction to individuals who are not, and may never be, present in any of the plaintiff States, and for whom the plaintiff States will never seek reimbursement under any of the federal programs they identify. The States' monetary injuries are completely remedied by relief tailored to those monetary injuries; ordering relief that has no effect on the States' asserted monetary harms "would not render [*the States'*] relief any more complete." *CASA, Inc.*, 2025 WL 1773631, at *11.

The States fare no better in asserting that universal relief is necessary because they face administrative burdens created by the Executive Order, asserting that they would be "required to overhaul their systems to verify eligibility for Medicaid, CHIP, and Title IV-E because they must verify the citizenship of *every* child they serve, regardless of where they were born." States Br. 59-60. While those harms could come to pass if the States are required to treat persons covered by the Executive Order as noncitizens for purposes of the specified programs, under an appropriate injunction, the States could continue to treat covered persons as citizens for purposes of their programs. Accordingly, the States could generally continue verifying eligibility as they have been, and any minor changes in the verification process do not require sweeping relief. The States could continue to treat "birth certificates issued by other

10

state agencies" as sufficient basis for eligibility for Title IV-E, for example, 1-SER-168 (Washington); 1-SER-297 (same for Oregon); 2-SER-309 (same for Illinois); could continue to conclude that a child is eligible for Medicaid and CHIP through "an automated process when a mother living in Arizona" gives birth, 1-SER-262, or could continue to employ any of several methods of verification Washington uses for Medicaid and CHIP, *see* 1-SER-153-54.

The only example the States have identified where the verification process might be affected by the Executive Order is that certain Washington programs currently use social security numbers as the first step in verifying an individual's eligibility, *see* 1-SER-153-54, and the States assume that newborns covered by the Executive Order will no longer have social security numbers issued to them. That itself is based on speculation, as the Executive Order by its terms does not require the Social Security Administration to stop issuing numbers and SSA has made no announcement to that effect.[3] But even assuming that claim is true, Washington's use of social security numbers plainly would not justify requiring the federal government to issue passports or other documents recognizing citizenship or to treat nonparties as citizens for any purpose other than the States' programs, much less to do so on a universal basis. Moreover, Washington's declarant makes clear that the State already

---

[3] The Executive Order directs agencies to stop issuing "documents recognizing United States citizenship" to covered individuals, ER-62, but social security cards are not such documents; many are held by non-citizens and do not serve as proof of citizenship status.

11

has in place multiple methods for verifying eligibility other than social security numbers. 1-SER-153-54. And insofar as an injunction requiring the federal government to allow the plaintiff States to continue to treat individuals born in the United States but covered by the Executive Order as citizens for purposes of the Enumeration at Birth program would lead to children born in Washington continuing to receive social security numbers through that program, the number of individuals who could be seeking to use Washington's federally funded programs but without a social security number under a party-specific injunction would be substantially reduced. *See* 1-SER-174 (estimating possible decline of $16,000 in annual reimbursements for Washington from Enumeration at Birth based on possible decline of 4,000 newborns eligible for social security numbers).

An injunction permitting the States to continue treating individuals born in the United States as citizens eligible for those programs would thus not alter the States' administrative burdens in any meaningful way and likewise does not require that relief run to non-party individuals in other States who have never, and may never, set foot in a plaintiff State, much less seek benefits through a federal program under which the State receives reimbursements.

Nor can plaintiffs resist a narrower injunction by asserting (at 62) that it would be difficult for the federal government to administer this narrower relief. As *CASA, Inc.* makes clear, the relevant inquiry is focused on remedying the plaintiff's injury; that injury sets the outer bounds of the relief the court may properly order. 2025 WL

12

1773631, at *12.  That the government may sometimes comply with a party-specific injunction in a manner that goes beyond the relief ordered and incidentally affords relief to some nonparties—for example, for administrability reasons—does not alter the court's power under the Judiciary Act to grant equitable relief.  *See id.* at *17 (Thomas, J., concurring) ("[T]he Court today readily dispatches with the individual and associational respondents' position that they require a universal injunction, notwithstanding their argument that a 'plaintiff-specific injunction' would be difficult to administer . . . ."); *Arizona v. Biden*, 31 F.4th 469, 485 (6th Cir. 2022) (Sutton, C.J., concurring) (observing that potential compliance issues are "initially the National Government's problem, not ours").

### B. Even If a Narrow Injunction Left Unremedied Some Residual Injury, Universal Relief That Imposes Substantial Burdens on the Defendant Would Still Be an Abuse of Discretion.

Even if the States could identify some residual injury not addressed by an injunction requiring the federal government to allow the plaintiff States to continue to treat individuals born in the United States but covered by the Executive Order as citizens for purposes of these programs, that residual injury could not justify extending the injunction universally.  As the Supreme Court explained in *CASA, Inc.*, "to say that a court *can* award complete relief is not to say that it *should* do so.  Complete relief is not a guarantee—it is the maximum a court can provide."  2025 WL 1773631, at *12.  Thus, "the broader and deeper the remedy the plaintiff wants, the stronger the plaintiff's story needs to be."  *Id.* (quoting Bray & Miller, *supra*, at

1797); *accord id.* at *16 (Thomas, J., concurring) ("In some cases, traditional equitable limits will require courts and plaintiffs to make do with less than complete relief.").

As these principles illustrate, even if an injunction tailored to the States left unaddressed some small, residual injury, or left the States to assume some marginal administrative burden, those relatively minor impacts on the plaintiffs could not justify expanding the injunction here to cover everyone in the nation. For example, Washington asserts that some alternative methods for verifying eligibility for federal programs aside from social security numbers are more "administratively burdensome." 1-SER-154. Even crediting that assertion, a small administrative burden on one plaintiff State from using other methods of verifying eligibility the State already employs is hardly a compelling justification for universal relief, particularly given (as discussed above) that children born in the State would continue under the narrowed injunction to receive social security numbers through the Enumeration at Birth program, so alternative methods would apply only to children who are born outside the State and seek benefits from the State during this litigation. Even if an equitable remedy were appropriate to address those children, the remedy that appropriately balanced benefits and burdens would require, at most, that the federal defendants issue social security numbers to children who move to Washington and request a social security number, not universal relief.

Sweeping relief based on the trifling administrative burden of verifying eligibility through alternative means is inappropriate not only because of all the

14

problems with universal relief that the Supreme Court identified in *CASA, Inc.*, but also because it would ignore that 19 other States object to the relief ordered here. *See* Tennessee Amicus Br.; Dkt. 89-1. And minor administrative burdens are a particularly weak basis for broad relief, as "ordinary compliance costs are typically insufficient to constitute irreparable harm" in the first place. *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005); *cf. CASA, Inc.*, 2025 WL 1773631, at *17 (Thomas, J., concurring) (explaining that associational plaintiffs' "burden of having 'to identify and disclose to the government' their membership" did not justify a universal injunction). Nor would it be inequitable to expect the States to take relatively minor steps to facilitate their own relief. *Cf. Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522 (1947) ("he who seeks equity must do equity").

## CONCLUSION

This Court should "expeditiously" clarify that the universal injunction issued by the district court is stayed by the Supreme Court's order except as to the individual plaintiffs or at a minimum clarify that it is stayed except as to the individual plaintiffs or to the extent it allows States to use existing methods of verifying citizenship to determine eligibility for state programs and requires the federal government to treat covered individuals as citizens for purposes of those programs.

When the Court resolves the appeal, the preliminary injunction should be reversed or at a minimum narrowed.[4]

---

[4] If further district court proceedings would be necessary, the federal defendants ask that the Court remand only after issuing a decision on the merits in order to facilitate timely Supreme Court review. This Court should also clarify that *CASA, Inc.* did not alter the allocation of burdens in a motion for a preliminary injunction. The plaintiff States filed a motion in this Court seeking to remand proceedings, which incorrectly (and without any legal explanation) contemplated burdens on a defendant to both propose and prove the sufficiency of an alternative injunction, neither of which finds any basis in precedent. Plaintiffs must carry the burden to establish their entitlement to an injunction, *Winter*, 555 U.S. at 20, which includes establishing that the injunction they seek is no more burdensome on the defendant than necessary to provide them complete relief and that the injunction comports with traditional principles of equity. Moreover, because the proper "remedy must be tailored to redress the … particular injury," *Gill v. Whitford*, 585 U.S. 48, 73 (2018), of those plaintiffs "with standing to sue," *CASA, Inc.*, 2025 WL 1773631, at *15, defendants cannot generally be expected to propose injunctions tailored to the not-yet-determined injuries of not-yet-determined plaintiffs with standing. Crafting the appropriate injunction is a job for the court *after* it decides which plaintiffs have standing and what their injuries are.

16

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE
BRAD HINSHELWOOD

 *s/ Derek Weiss*
DEREK WEISS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7230*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5365*
  *derek.l.weiss@usdoj.gov*

July 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of the supplemental briefing order and Circuit Rule 32-3 because it contains 4,062 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Derek Weiss*
Derek Weiss