No. 25-807

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STATE OF WASHINGTON, et al.,

*Plaintiffs-Appellees*,

v.

DONALD TRUMP, in his official capacity as
President of the United States, et al.,

*Defendants-Appellants*.

On Appeal from the U.S. District Court
for the Western District of Washington
Case No. 2:25-cv-00127-JCC

The Honorable John C. Coughenour

## INDIVIDUAL PLAINTIFFS' SUPPLEMENTAL BRIEF

Matt Adams
Glenda M. Aldana Madrid
Leila Kang
Aaron Korthuis
NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
*Attorneys for Individual Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

ARGUMENT .......................................................................................2

I.    *CASA* confirms the validity of Individual Plaintiffs' claims on behalf of themselves and the proposed class. ...............................................................2

II.   Individual Plaintiffs have standing and properly sought preliminary relief for themselves and putative Class Members. ......................................................5

III.  Defendants' appeal squarely presents the issue of whether Plaintiffs have satisfied the requirements for preliminary injunctive relief. ..........................8

IV.  The Court should address the central right at stake and the grave harm the EO poses to Class Members. ........................................................11

CONCLUSION .......................................................................................13

CERTIFICATE OF COMPLIANCE ......................................................15

CERTIFICATE OF SERVICE ..............................................................16

# TABLE OF AUTHORITIES

## Cases

*A.A.R.P. v. Trump*,
  145 S. Ct. 1364 (2025) (per curiam) ............................................ 6, 7, 9

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) ......................................................... 6

*Bridges v. Wixon*,
  326 U.S. 135 (1945) ..................................................................... 13

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ....................................................................... 4

*CASA, Inc. v. Trump*,
  763 F. Supp. 3d 723 (D. Md. 2025) .............................................. 2

*Doe v. Trump*,
  766 F. Supp. 3d 266 (D. Mass. 2025) ........................................... 2

*Fedorenko v. United States*,
  449 U.S. 490 (1981) ..................................................................... 12

*Kennedy v. Mendoza-Martinez*,
  372 U.S. 144 (1963) ..................................................................... 12

*Maney v. Brown*,
  516 F. Supp. 3d 1161 (D. Or. 2021) ............................................. 6

*Ng Fung Ho v. White*,
  259 U.S. 276 (1922) ..................................................................... 13

*Patton v. Yount*,
  467 U.S. 1025 (1984) .................................................................... 12

*Pitts v. Terrible Herbst, Inc.*,
  653 F.3d 1081 (9th Cir. 2011) ..................................................... 10

iii

*Schneiderman v. United States*,
   320 U.S. 118 (1943) ...................................................................12

*Sosna v. Iowa*,
   419 U.S. 393 (1975) ...................................................................10

*Trop v. Dulles*,
   356 U.S. 86 (1958) .....................................................................12

*Trump v. CASA, Inc.*,
   606 U. S. ____, No. 24A844, slip. op. (Jun. 27, 2025) ............................... passim

*Trump v. Int'l Refugee Assistance Project*,
   582 U.S. 571 (2017) (per curiam) ...............................................7, 9

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .......................................................................13

**Treatises**

2 William Rubenstein, Newberg & Rubenstein on Class Actions § 4:30 (6th ed. 2022 & Supp. 2024).........................................................................7

**Constitutional Provisions**

U.S. Const. amend. XIV, § 1, cl. 1 ..........................................................11

**Other Authorities**

Transcript, *Trump v. CASA, Inc.*, 606 U.S. ___ (2025) (No. 24A884) ....................8

## INTRODUCTION

Pursuant to this Court's order, Individual Plaintiffs submit this supplemental brief on behalf of themselves and the putative class to address the impact of the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U. S. ____ (2025), on the appeal pending before this Court. The decision in *CASA* does not undermine, but instead reinforces, Individual Plaintiffs' request for preliminary injunctive relief on behalf of themselves and the proposed class. Individual Plaintiffs only sought an injunction to protect themselves and proposed class members from the irreparable harm that the lower court correctly found would occur absent court intervention. This is consistent with the Supreme Court's instruction in *CASA* that "[a] properly conducted class action" under Rule 23 is the appropriate vehicle by which individuals may seek relief that benefits similarly situated persons. *Trump v. CASA, Inc.*, 606 U. S. ____, No. 24A844, slip. op. at 14 (Jun. 27, 2025).

Accordingly, if this Court concludes that the lower court's injunction provided overbroad relief to the Plaintiff States, any modified injunction should encompass Individual Plaintiffs and the putative class.[1]

---

[1]     Notably, the *CASA* decision did *not* find the challenged injunctions overbroad. Instead, it reaffirmed the longstanding principle that courts must order "complete relief *between the parties*." Slip Op. at 16 (citation omitted). The Court remanded for the lower courts to determine whether "with respect to each plaintiff, the injunctions comport with this rule." *Id.* at 26.

1

## ARGUMENT

### I. *CASA* confirms the validity of Individual Plaintiffs' claims on behalf of themselves and the proposed class.

In the three consolidated cases before the Supreme Court in *CASA*, the Court stayed the district courts' preliminary injunctions, "but only to the extent that the injunctions are broader than necessary to provide complete relief to each plaintiff with standing to sue." Slip Op. at 26.

In one of the cases, *CASA*, organizational plaintiffs and affected individuals challenged the Executive Order (EO), without seeking class certification. *See CASA, Inc. v. Trump*, 763 F. Supp. 3d 723, 729–30 (D. Md. 2025). The district court nevertheless entered a nationwide injunction, finding it necessary to provide relief to the organizational plaintiffs. *Id.* at 746.

In a second case, *Doe v. Trump*, several states, organizations, the District of Columbia, San Francisco, and one individual also brought suit seeking to enjoin the EO—also without moving for class certification. 766 F. Supp. 3d 266, 273–74 (D. Mass. 2025). The district court likewise entered a nationwide injunction, concluding universal relief was necessary to protect the plaintiff states. *Id.* at 288.

The instant appeal involves two consolidated actions: one brought by the states of Washington, Arizona, Illinois, and Oregon, and another brought by pregnant individuals on behalf of a putative class of similarly situated persons and their children. ER-18–19. The district court issued a nationwide preliminary

injunction enjoining the EO without addressing class certification prior to entry of the injunction. ER 7–15. Similar to *Doe*, the district court reasoned that nationwide relief was necessary to afford complete relief to the states. ER-14–15

The Supreme Court's stay order leaves the injunction in place for Individual Plaintiffs. Defendants' emergency stay application expressly disclaimed any request to stay the preliminary injunction as to the individual plaintiffs. *See* Appl. for a Partial Stay of the Inj. at 4, *Trump v. CASA, Inc.*, 606 U. S. ____ (2025) (No. 24A884) ("The Court should stay the district courts' preliminary injunctions except as to the individual plaintiffs and the identified members of the organizational plaintiffs (and, if the Court concludes that States are proper litigants, as to individuals who are born or reside in those States)."). The application did not address the propriety of the preliminary injunction as to the putative class. As a result, the Supreme Court's analysis focused on "universal injunctions"—instances where "district courts assert[] the power to prohibit enforcement of a law or policy against *anyone*"—and said nothing to diminish district courts' authority to prohibit enforcement of a law or policy against the parties before it. *CASA*, slip op. at 1.

Although the Court's holding does not directly reach Individual Plaintiffs or the putative class, three aspects of the Court's analysis bear on the status of Individual Plaintiffs' claims for relief for themselves and the proposed class.

First, the Court observed "a significant problem with universal injunctions"—namely, that they "forg[e] a shortcut to relief" for nonparties and thus "circumvent Rule 23's procedural protections." *Id.* at 14. Recognizing that Individual Plaintiffs indisputably "have standing to sue," *id.* at 2 n.2, the Court explained that "[a] properly conducted class action" under Rule 23 is the appropriate vehicle where individuals seek relief that would affect similarly situated persons beyond the named parties. *Id.* at 14 (citation modified); *see also id.* at 6 (Kavanaugh, J., concurring) (explaining that "[t]he decision today will not alter this Court's traditional role in those matters," as district courts may continue to provide "the functional equivalent of a universal injunction—for example, by granting or denying a preliminary injunction to a putative nationwide class under Rule 23(b)(2)"). That principle is consistent with the Supreme Court's longstanding recognition that a "nationwide class [is not] inconsistent with principles of equity jurisprudence, since the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

Second, the Court acknowledged that, in limited circumstances, relief that extends beyond the named plaintiffs may be necessary to afford "complete relief" to those plaintiffs. *CASA*, slip op. at 16–17. However, the Court cautioned that such relief is not automatic, emphasizing that "to say that a court *can* award

4

complete relief is not to say that it *should* do so." *Id.* at 18; *see also id.* at 17
(noting that the inquiry is "more complicated for the state respondents "). The
Court further underscored that a request for broad relief is subject to a heightened
burden, noting that "in equity, the broader and deeper the remedy the plaintiff
wants, the stronger the plaintiff's story needs to be." *Id.* at 18 (citation modified).

Finally, the Supreme Court left the precise contours of any injunction to the
lower courts, directing them to "determine whether a narrower injunction is
appropriate" in the first instance. *Id.* at 19. The Court also stayed the injunctions
insofar as they barred Defendants from issuing public guidance and delayed the
effective date of § 2 of the EO for 30 days after the date of the Court's opinion. *Id.*
at 26.

## II. Individual Plaintiffs have standing and properly sought preliminary relief for themselves and putative Class Members.

From the beginning of this litigation, Individual Plaintiffs properly sought
class certification and preliminary injunctive relief for themselves and the putative
class. *See, e.g.*, Dkt. 58 (motion for class certification); Dkt. 74 (motion for
preliminary injunctive relief);[2] *see also Franco Aleman v. Trump*, No. 2:25-cv-
163-JCC (W.D. Wash. Jan. 24, 2025), Dkt. 1 at 17–19, 21 (class allegations in
original complaint, before consolidation with states' case). They specifically

---

[2]     Unless otherwise specified, docket cites are to the docket in the case below,
*Washington v. Trump*, No. C25-0127-JCC (W.D. Wash.).

5

requested provisional class certification to ensure that all putative class members would be protected by any injunctive relief the court would issue, given the serious harms that would befall all members were the EO permitted to go into effect. *See* Dkt. 58 at 19 (requesting provisional class certification in motion for class certification); Dkt. 74 at 2 n.1 (same, in preliminary injunction motion); Dkt. 107 at 19 (reaffirming request in reply in support of motion for preliminary injunction); Dkt. 115 (seeking reconsideration of court's failure to provisionally certify class for purposes of injunctive relief).

This request accords with Ninth Circuit practice, which "approve[s] provisional class certification for purposes of preliminary injunction proceedings." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n.4 (9th Cir. 2020); *see also, e.g.*, *Maney v. Brown*, 516 F. Supp. 3d 1161, 1171 (D. Or. 2021) ("Courts in the Ninth Circuit routinely grant provisional class certification for purposes of entering injunctive relief." (citation modified)).

The Supreme Court has recently affirmed the propriety of this practice. In *A.A.R.P. v. Trump*, the Court afforded preliminary injunctive relief to a putative class that had not yet been certified, recognizing that "courts may issue [such] temporary relief to a putative class" to preserve a court's jurisdiction when harm to that class is imminent. 145 S. Ct. 1364, 1369 (2025) (per curiam). The Court relied on a leading treatise on class actions, which itself explains that "a court may issue

6

a classwide preliminary injunction in a putative class action suit prior to a ruling on the class certification motion or in conjunction with it." 2 William Rubenstein, Newberg & Rubenstein on Class Actions § 4:30 (6th ed. 2022 & Supp. 2024); *see also Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017) (per curiam) (leaving injunctions in place for "respondents and those similarly situated," even though class had not been certified). Critically, the Court "reject[ed] the proposition that a class-action defendant may defeat class treatment, if it is otherwise proper, by promising as a matter of grace to treat named plaintiffs differently," such as by voluntarily sparing them from imminent harm. *A.A.R.P.*, 145 S. Ct. at 1369–70.

Here, it is undisputed that the Individual Plaintiffs have standing to challenge the EO, *see* ER-6 n.3, and, by extension, that the proposed class members do so as well. The Supreme Court's decision in *CASA* reinforces that class certification is the proper vehicle for providing protection to similarly-situated individuals in this case. Slip. Op. at 13–14. The Court's decision explained that Rule 23 class actions are the modern analogue to the founding-era bill of peace and stressed that the rigorous "procedure set out in Rule 23" must be satisfied before any wide-ranging relief issues. *Id.* at 14 (citation omitted); *see also id.* (criticizing "universal injunctions" for being "a class-action workaround").

7

Accordingly, if this Court determines that the scope of the lower court's injunction is overbroad as to the Plaintiff States, it should nevertheless maintain the injunction as to the Individual Plaintiffs and the putative class.

### III. Defendants' appeal squarely presents the issue of whether Plaintiffs have satisfied the requirements for preliminary injunctive relief.

As noted, Defendants do not dispute that the Individual Plaintiffs have standing to seek preliminary injunctive relief. Accordingly, Defendants' appeal squarely presents the question of whether Individual Plaintiffs have satisfied the factors required for issuing a preliminary injunction, including whether they are likely to succeed on the question of whether the EO violates the Fourteenth Amendment and the Immigration and Nationality Act. In their appeal, Defendants challenge the likelihood of success on the merits for all plaintiffs—both the states and the individual noncitizens alike. Op. Br. 11–41. Thus, this Court is well positioned to resolve that pure legal question. Indeed, in *CASA*, the Supreme Court instructed the lower courts to proceed expeditiously. *See, e.g.*, Transcript at 36–37, 50, *Trump v. CASA, Inc.*, 606 U.S. ___ (2025) (No. 24A884); *see also* Slip Op. at 26 (urging lower courts to review expeditiously the scope of the injunctions at issue); *id.* at 44 (Sotomayor, J., dissenting) (same, as to merits).

This merits question presents a live controversy for the entire putative class. Defendants have never questioned the Individual Plaintiffs' standing. *See* Op. Br. 44–49 (challenging only the states' standing); *see also* Dkt. 84 at 7–13 (same). And

Individual Plaintiffs have established a likelihood of success on the merits, demonstrated irreparable harms, and satisfied the remaining factors for a preliminary injunction. *See* Indiv. Pls.' Ans. Br. 10–56. Accordingly, as detailed above, it was also appropriate for the district court to enter an injunction that covered them and the putative class. In time-sensitive situations such as the one here, the Supreme Court has upheld or employed similar temporary classwide relief on behalf of putative classes. *See, e.g.*, *A.A.R.P.*, 145 S. Ct. at 1369 ("[C]ourts may issue temporary relief to a putative class . . . ."); *Int'l Refugee Assistance Project*, 582 U.S. at 585 (Thomas, J., concurring in part and dissenting in part) (noting that the court had upheld broad relief notwithstanding the absence of a class).

Moreover, even if Defendants delay implementing Section 2 of the EO until 30 days after the *CASA* opinion, *see* Slip Op. at 26, such delay neither affects Individual Plaintiffs' standing nor undermines their request for preliminary injunctive relief. This is true for two reasons.

First, as putative class representatives, Individual Plaintiffs' claims relate back to the filing of the complaint, and a live controversy remains for the class. As this Court has explained, "if the district court has certified a class, mooting the putative class representative's claim will not moot the class action." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011). This is "because upon

9

certification the class 'acquire[s] a legal status separate from the interest asserted by [the class representative],'" and Article III standing remains for the class. *Id.* (alterations in original) (quoting *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)). That principle preserves Individual Plaintiffs' challenge.

Second, even if Individual Plaintiffs' claims have become or will become moot as to § 2 of the EO, the EO still threatens them and their children with irreparable harm. It is only "§ 2 of the Executive Order" that "shall not take effect until 30 days after the [Supreme Court's] opinion." Slip Op. at 26. The order's other two sections remain operative. And significantly, § 1 sets out the ostensible legal principle that "United States citizenship does not automatically extend to persons born in the United States," including "(1) when that person's mother was unlawfully present in the United States and the father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) when that person's mother's presence in the United States at the time of said person's birth was lawful but temporary." ER-62. Separately, the EO's third section instructs federal agencies to implement the order. ER-63. As a result, even if § 2 does not apply to the Individual Plaintiffs, they still face an acute threat that the remaining provisions will strip their children of citizenship.

This threat is heightened because, if Defendants prevail, they may later insist that the Fourteenth Amendment and 8 U.S.C. § 1401(a) cannot shift in meaning

10

over time. Indeed, if Defendants persuade this Court that the Citizenship Clause of the Fourteenth Amendment excludes children born in the United States to noncitizen parents who are not lawful permanent residents, it necessarily follows that despite the administration's assertion that it will not apply § 2 retroactively, hundreds of thousands of U.S.-born individuals (and indeed, even *their* U.S.-born children)[3] would be in jeopardy of losing their citizenship and facing the same harms confronting Individual Plaintiffs and the putative class.

### IV. The Court should address the central right at stake and the grave harm the EO poses to Class Members.

The right at issue here goes to the heart of what it means to belong to this Nation. And the plain text of the Fourteenth Amendment affords that right— citizenship—to "[a]ll persons born . . . in the United States, and subject to the jurisdiction thereof." U.S. Const. amend. XIV, § 1, cl. 1. The Citizenship Clause thus guarantees for *all* people born in the United States, regardless of race or parentage, the "priceless treasure" that is U.S. citizenship. *Fedorenko v. United States*, 449 U.S. 490, 507 (1981) (citation omitted).

---

[3] If Defendants' position were accepted, it would call into question the citizenship of millions of Americans across generations. The Fourteenth Amendment's meaning cannot change overnight. A noncitizen who entered unlawfully decades ago and married a similarly situated noncitizen (or even one with legal but non-permanent status) would see their children and grandchildren thrown into uncertainty over their citizenship and legal identity. Where this ball of yarn will end, no one knows.

Individual Plaintiffs and putative class members face grave irreparable harm if the Court does not affirm the preliminary injunction to protect them from the EO. The order's directive to strip people of their birthright citizenship amounts to "the total destruction of the individual's status in organized society" and constitutes "a form of punishment more primitive than torture." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). "Citizenship is a most precious right," *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 159 (1963), whose "value and importance" are "difficult to exaggerate," *Schneiderman v. United States*, 320 U.S. 118, 122 (1943). Absent preliminary injunctive relief, Individual Plaintiffs' children and putative class members risk losing their entitlement to U.S. citizenship, facing immigration enforcement, and being deprived of pathways to healthcare and education, and ultimately the ability to vote or travel, along with the other precious rights that U.S. citizenship affords.

Fundamental constitutional rights "in our society [can]not . . . be decided by executive fiat or by popular vote." *Patton v. Yount*, 467 U.S. 1025, 1054 (1984) (Stevens, J., dissenting). The Constitution is clear in this case—and the consequences of the EO threaten Individual Plaintiffs and putative class members with "the loss 'of all that makes life worth living.'" *Bridges v. Wixon*, 326 U.S. 135, 147 (1945) (quoting *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922)).

The Supreme Court's decision in *CASA* only reinforces the propriety of injunctive relief for Individual Plaintiffs and the putative class members. The district court correctly concluded that Individual Plaintiffs demonstrated (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Accordingly, at a minimum, this Court should affirm the injunction to the extent necessary to protect Individual Plaintiffs and the proposed class and to preserve the status quo while this case proceeds.

## CONCLUSION

For all the reasons presented here and in Individual Plaintiffs' answering brief, this Court should affirm the injunction to preserve the status quo and prevent irreparable harm to Individual Plaintiffs and the putative class.

Respectfully submitted this 11th of July, 2025.

s/ Matt Adams
Matt Adams, WSBA No. 28287
matt@nwirp.org

s/ Glenda M. Aldana Madrid
Glenda M. Aldana Madrid,
WSBA No. 46987
glenda@nwirp.org

s/ Leila Kang
Leila Kang, WSBA No. 48048

leila@nwirp.org

s/ Aaron Korthuis
Aaron Korthuis, WSBA No. 53974
aaron@nwirp.org


NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

*Counsel for Individual Plaintiffs*

## CERTIFICATE OF COMPLIANCE

This brief is 13 pages long, excluding the items exempted by Federal Rule of Appellate Procedure 32(f), and thus complies with the page limit imposed by this Court's order, Dkt. 145.1. The brief's size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6).

DATED this 11th day of July 2025.

s/ Glenda M. Aldana Madrid
Glenda M. Aldana Madrid, WSBA No. 46987
Northwest Immigrant Rights Project
615 Second Avenue, Suite 400
Seattle, WA 98104
glenda@nwirp.org

## CERTIFICATE OF SERVICE

I hereby certify that, on July 11, 2025, I electronically filed the foregoing documents with the Clerk of the Court by using the Appellate Case Management System. I further certify that the participants in the case are ACMS users and that service will be accomplished by using the ACMS system.

DATED this 11th day of July 2025.

s/ Glenda M. Aldana Madrid
Glenda M. Aldana Madrid, WSBA No. 46987
Northwest Immigrant Rights Project
615 Second Avenue, Suite 400
Seattle, WA 98104
glenda@nwirp.org